IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAITLYN OCKREE, | ) | Civil Division |
| | ) | |
| Plaintiff, | ) | No. 2:20-cv-1846 |
| v. | ) | |
| | ) | |
| WEST PENN ALLEGHENY HEALTH SYSTEM, INC. | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

AND NOW COMES Plaintiff, Kaitlyn Ockree ("Plaintiff" or "Ms. Ockree"), by and through her undersigned counsel, and brings this Complaint seeking legal and equitable relief for age and disability discrimination, retaliation and wrongful termination against Defendant West Penn Allegheny Health System, Inc. (collectively "Defendant" or "WPAHS") in violation of the Americans with Disabilities Act of 1990 ("ADA") and the ADA Amendments Act of 2008 ("ADAAA"), as well as pendent state law claims arising under the provisions of the laws of this Commonwealth, to wit, the Pennsylvania Human Relations Act, 42 P.S. § 951, et seq. (hereinafter referred to as "PHRA"). In addition, Ms. Ockree contends that she was wrongfully terminated in violation of the public policy of this Commonwealth and retaliated against for being a whistleblower under Pennsylvania Whistleblower Law and Act 102, the Prohibition of Excessive Overtime in Healthcare Act. Ms. Ockree states and avers the following:

## JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1391. This action is authorized and instituted pursuant to the ADA, ADAAA, and the PHRA.

1

2. Pursuant to 28 U.S.C. § 1367(a), The United States District Court for the Western District of Pennsylvania has supplemental jurisdiction over Ms. Ockree's state-law whistleblower retaliation claim, which arises from the case and/or controversy as the aforementioned claims, for which this Court has original jurisdiction.

3. The unlawful employment practices and wrongful termination were committed by the WPAHS at Forbes Regional Hospital (Allegheny County), where Plaintiff worked as a registered nurse for WPAHS. Therefore, the United States District Court for the Western District of Pennsylvania is the proper venue for the action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §1391(b).

4. Plaintiff timely exhausted her administrative remedies by filing a charge against Defendant jointly with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") at 533-2020-01864. Plaintiff's PHRC and EEOC Charges are incorporated by reference as if fully set forth herein. On September 2, 2020, the EEOC mailed Plaintiff a Dismissal and Notice of Rights letter (the "Right to Sue" letter), advising her of the right to bring this action. Plaintiff has filed the instant suit within 90 days of receipt of the Right to Sue letter.

5. At all relevant times hereto, the Hospital was an employer within the meaning of the ADA, and ADAA.

**PARTIES**

6. Kaitlyn Ockree is an adult female who resides at 194 Center Street, Springdale, PA 15144.

7. Defendant West Penn Allegheny Health System, Inc. is a registered Pennsylvania non-profit and subsidiary of Allegheny Health Network operating under the laws and within the

Commonwealth of Pennsylvania. WPAHS maintains a principal place of business at 120 Fifth Avenue Suite 2900 Pittsburgh, PA 15222. Ms. Ockree was employed at Defendant's facility located at 2570 Haymaker Rd, Monroeville, PA 15146, known as "Forbes Hospital" as a registered nurse in the low-level Neonatal Intensive Care Unit ("NICU").

### FACTS

8. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

9. Ms. Ockree worked as a nurse in Forbes' low-level Neonatal Intensive Care Unit (NICU) from January 7, 2019 until she was fired on June 12, 2020.

10. Ms. Ockree was a qualified individual under the ADA. She had the skill, experience, education, and other job-related requirements as a registered nurse; and she could perform the job's essential functions with or without an accommodation.

11. In February 2019, Ms. Ockree began exploring an accommodation request to work only daylight hours due to her disability, which was scheduled to last approximately six (6) months.

12. This request was confirmed by the documentation submitted by Ms. Ockree's physician, Heather L. Fry, PhD.

13. Dr. Fry further advised that Ms. Ockree should <u>not</u> be required to work overtime.

14. Upon renewal in November 2019, Dr. Fry requested Ms. Ockree's hours be reduced to part-time/

15. The accommodation request was initially approved by Forbes, along with subsequent renewals.

16. All of the other nurses on the unit knew of Ms. Ockree's accommodation because of the size of the NICU.

17. Scheduling was handled in groups of three with individuals assigned to group one having preference in terms of choosing shifts and with individuals in group three choosing their shifts last.

18. Nurses rotated through the groups each time they were required to schedule. On occasion, when assigned to schedule in group three, Ms. Ockree would require management to take shifts away from other employees to meet her accommodation, causing management extra effort in rearranging the schedule and discontent amongst her co-workers.

19. Ms. Ockree was targeted as a result of her accommodation resulting in her having a more "desirable schedule" as a result of her inability to work night shifts.

20. Ms. Ockree ignored the disparate treatment she was receiving from her co-workers and continued to perform her job to the best of her ability, meeting the expectations of her employer.

21. In January of 2020, Ms. Ockree raised a concern regarding doctors performing circumcisions without applying an anesthetic agent.

22. Ms. Ockree reasonably believed that such conduct could have injured the patient(s) involved, but did not either cause an unanticipated injury or require the delivery of additional health care services to the patient.

23. Specifically, Ms. Ockree spoke with her supervisors Tiffany Mayer and Lynn Kosar, and emailed Bernard Peticca, M.D. ("Dr. Peticca").

24. Ms. Ockree discussed her concern that most doctors were regularly performing circumcisions on the unit with no anesthetic agent, which violated Hospital policy.

25. When her concerns went unaddressed, Ms. Ockree filled out an RL6 Form (akin to an internal incident report or patient safety form) after witnessing a bad circumcision performed without anesthetic or a consent form from the parent electing not to have anesthetic.

26. Dr. Pettica made the excuse that he ignored Ms. Ockree's email because he did not know who she was, and he was worried about phishing (even though you can tell the email was generated from an internal Hospital email).

27. From that point forward, Dr. Pettica referred to Ms. Ockree as the "circ police," an offensive term.

28. In February of 2020, Ms. Ockree raised additional safety concerns regarding the lack of a pediatric monitor, pulse oximeter and Panda radiant warmer the main operating room.

29. Specifically, she emailed Tiffany Mayer about getting a peds monitor and pulse ox in the main operating room.

30. Ms. Ockree indicated that it was a safety and care necessity and did so after witnessing an incident involving a patient wherein said patient could have reasonably been injured if a peds monitor and/or pulse ox was unavailable.

31. Again, Ms. Mayer ignored her safety concern.

32. Instead, almost immediately thereafter, in March of 2020, Ms. Ockree was requested to work overtime in violation of her accommodation and in violation of Act 102 by her assigned manager, Tiffany Mayer.

33. Fortunately, her scheduled overtime shift was covered by a per diem staff member who was looking to pick up hours.

34. At this point, Ms. Ockree filed a Complaint with the Pennsylvania Board of Labor and Industry and advised Lynn Kosar of her action.

35. From this point forward, the Hospital intentionally interfered with and attempted to deny Ms. Ockree's accommodation when it was up for renewal.

36. It took the Hospital approximately two months for Ms. Ockree to get her request approved.

37. Dr. O'Neill, the physician for AHN, demanded Ms. Ockree move to working "reduced" night shifts, since they were short-staffed.

38. A staffing issue with the Hospital does not constitute an "undue burden" under the ADA which would allow the Hospital to deny Ms. Ockree's accommodation request.

39. Further, Dr. O'Neill's demand for Ms. Ockree to work night shifts completely ignores the requested accommodation itself. Ms. Ockree pushed back, offering to return to a full-time daytime position.

40. Forbes continued to attempt to force Ms. Ockree into accepting certain night shifts.

41. Dr. Fry was required to intervene on behalf of Ms. Ockree, and her request was ultimately approved in May.

42. Dr. Fry later conveyed to Ms. Ockree that the Hospital was attempting to convince her that Ms. Ockree did not require any accommodation whatsoever.

43. On June 9, 2020, Ms. Ockree raised another safety concern and completed another RL6 for having six (6) babies in the NICU nursery, which was only licensed for four (4) and the NICU did not have sufficient staffing.

44. Only a few hours later, after indicating that she completed another RL6 for staffing and safety concerns, Ms. Ockree was pulled into the Human Resources office and "suspended pending a final investigation."

45. On June 12, 2020 she was terminated for claimed disrespectful and insubordinate behaviors.

46. When Ms. Ockree received the decision that she was terminated, she asked Human Resources who conducted the "investigation" into Ms. Ockree's claimed behaviors.

47. Human Resources admitted that it was conducted by Ms. Kosar and Ms. Mayer before being allegedly reviewed by HR and Legal, the same individuals who were participants in the subject conversations and the same individuals to whom Ms. Ockree made multiple reports about pertaining to patient safety.

48. Ms. Ockree was never interviewed regarding any of the alleged behaviors that lead to her termination and the Hospital's Progressive Discipline Policy was not followed.

49. At all times relevant hereto, Defendant was an employer within the meaning of and subject to anti-discrimination, anti-retaliation statutes and whistleblower statute.

50. Plaintiff is in a protected class under the ADA, ADAAA, and PHRA at the time the acts of discrimination and retaliation occurred.

51. At all relevant times hereto, Defendant acted or failed to act by and through its duly authorized agents, servants, and employees, who conducted themselves within the scope and course of their employment.

**COUNT I**
**DISCRIMINATION, INTERFERENCE, RETALIATION AND WRONGFUL DISCHARGE – AMERICANS WITH DISABILTIES ACT AND AMENDMENTS THERETO ("ADA" AND "ADAAA")**

52. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

53. Plaintiff is a "qualified individual with a disability" as that term is defined in the ADA and or ADAAA because she has, or had at all times relevant hereto, a physical impairment

that substantially limited/limits one or more major life activities, or because she had a record of such impairment.

54. Plaintiff also is a "qualified individual with a disability" as that term is defined in the ADA and/or ADAAA because she was regarded as and/or perceived by Defendant and their agents as having a physical and/or mental impairment that substantially limited/limits one or more major life activities.

55. However, Plaintiff could complete the functions of her position as a registered nurse at Forbes with reasonable accommodation, specifically, working only daylight hours, a reduced schedule and no overtime.

56. Forbes interfered with Ms. Ockree's right to an accommodation when they engaged in the following actions, including, but not specifically limited to:

   a. Attempting to deny Ms. Ockree's accommodation after she complained to the Department of Labor;

   b. Taking upwards of two (2) months to approve her request;

   c. Demanding Ms. Ockree move to working "reduced" night shifts, since they were short-staffed; and

   d. Continuing to attempt to force Ms. Ockree into accepting certain night shifts;

57. The aforementioned actions were waged against Ms. Ockree in an effort to get to her abandon her employment.

58. Thereafter, when the Hospital was left with no choice but to approve Ms. Ockree's accommodation, they retaliated against her, *inter alia,* for requesting an accommodation and set her up to be terminated.

59. Ms. Ockree's disability and her need for an accommodation was a motivating factor in the decision to fire her, in order to replace her with a non-disabled individual who was able to work night shifts and overtime hours.

60. As a result of Defendant's unlawful disability discrimination, interference, retaliation and wrongful termination, Plaintiff has suffered damages as set forth herein including substantial lost wages.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
## PHRA – DISCRIMINATION and RETALIATION

61. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length

62. This is an action arising under the provisions of the laws of the PHRA and this Honorable Court has, and should, exercise pendent jurisdiction over the same because the cause of action set forth in this COUNT III arises out of the same facts, events and circumstances as in the above COUNTS I AND II, and therefore judicial economy and fairness dictate that this COUNT II be brought in this same Complaint.

63. At all times relevant, Defendant was an "employer" within the meaning of Section 954(b) of the PHRA.

64. By engaging in the creation and fostering of a discriminatory and retaliatory environment based on Ms. Ockree's disability, Defendant violated those sections of the PHRA which prohibits discrimination and retaliation based upon disability regarding the continuation and tenure of employment.

65. Ms. Ockree requested a reasonable accommodation for her disability, which constitutes protected activity under the ADA and amendments thereto.

66. Defendant further interfered with Ms. Ockree's right to an accommodation, as detailed above, in an effort to force Ms. Ockree to abandon her employment.

67. Thereafter, Defendant retaliated against Ms. Ockree for requiring such accommodation.

68. Defendant knew or should have known about the discriminatory and retaliatory conduct to which Plaintiff was subjected and failed to take appropriate remedial action.

69. Defendant's failure to maintain a workplace free of discrimination and retaliation and the failure to take prompt remedial action were intentional, malicious and in reckless indifference to Plaintiff's protected state rights.

70. Defendant's discriminatory and retaliatory conduct towards and wrongful termination of Plaintiff as a result of her engaging in a protected activity remains a violation of the PHRA.

71. Ms. Ockree sustained damages as a direct and proximate result of Defendant's conduct.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
## WRONGRUL TERMINATION
## IN VIOLATION OF PENNSYLVANIA PUBLIC POLICY

72. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

73. Act 102 provides that "a health care facility may not require an employee to work in excess of an agreed to predetermined and regularly scheduled daily work shift."

74. On multiple occasions, the Hospital violated Act 102, by requesting Ms. Ockree work overtime.

75. In addition, the Act provides that retaliation is prohibited: "The refusal of an employee to accept work in excess of the limitations set forth in [the Act] shall not be grounds for discrimination, dismissal, discharge or any other employment decision adverse to the employee.["] 43 P.S. § 932.3(b).

76. Ms. Ockree was fired in retaliation for her refusal to accept overtime work.

77. Her discharge offends the public policy of the Commonwealth of Pennsylvania as embodied in Act 102 generally, and in 43 Pa. Stat. § 932.3(b) specifically.

78. An employee has a common law action for wrongful discharge where there is a clear violation of public policy in the Commonwealth.

79. Because Act clearly provides that retaliation against an employee is not permitted. 43 P.S. § 932.3(b), it is the public policy of the Commonwealth as set forth by the Legislature.

80. WPAHS violated the public policy of the Commonwealth and were the direct and proximate cause of Ms. Ockree's damages when the fired her for her refusal to accept overtime work.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT IV
## VIOLATIONS OF THE ANTI-RETALIATION PROVISION OF PENNSYLVANIA'S MCARE ACT, TITLE 40 SECTION 1303.308(C) LIABILITY AND THE PENNSYLVANIA WHISTLEBLOWER LAW

81. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

82. The unlawful firing of the Plaintiff described above was also violative of the anti-retaliation provision of Pennsylvania's MCARE Act, Title 40 Section 1303.308(c).

83. The Plaintiff was a 'health care worker' under the MCARE Act, and the Defendants constituted a 'Medical facility' under the Act.

84. The occurrences which the Plaintiff reported, detailed *supra*, constituted either/both 'serious events' or 'incidents' as defined by the Act.

85. Ms. Ockree reported the occurrences within 24 hours after the occurrences or the discovery of the occurrences and/or serious events or incidents.

86. As a direct result of Ms. Ockree's reports, the Defendants fired Ms. Ockree in retaliation for making these reports.

87. As a direct and proximate result of the Defendant's retaliatory firing, Ms. Ockree has sustained damages, including but not limited to loss of back pay and future pay, loss of back benefits and future benefits, emotional distress, humiliation, inconvenience, loss of professional opportunities, loss of personal and professional reputation, loss of earnings capacity, loss of community standing, and other financial losses.

88. The retaliatory firing was also outrageous, done willfully and wantonly, and was done with reckless disregard for the Ms. Ockree's right to be free from retaliation, as explicitly set forth in the MCARE Act. Accordingly, the Plaintiff demands punitive damages.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## **DEMAND FOR JURY**

WHEREFORE, Plaintiff demands judgment against Defendant, and damages in excess of $75,000 as follows:

a. That Plaintiff be awarded actual and consequential damages to make Plaintiff whole including back pay with prejudgment interest, front pay and compensation for lost benefits, in an amount to be proven at trial, and other affirmative relief necessary to eradicate the effects of Plaintiff's damages associated with Defendant's discrimination, retaliation and wrongful termination of Plaintiff pursuant to the above, plus interest;

b. That Plaintiff be awarded economic and compensatory damages to compensate for all costs associated with the discrimination and retaliation including lost wages and medical expenses;

c. That Plaintiff be awarded nominal damages;

d. That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendant for its intentional, wanton and malicious conduct and to deter similar misconduct;

e. That Plaintiff be awarded the costs of this litigation, including reasonable attorney's fees; and

f. That Plaintiff be awarded such further relief as deemed to be just and proper.

Date:   November 30, 2020            Respectfully Submitted,

                                                                                        */s/ Brian P. Benestad*
                                                                                        Brian P. Benestad, Esquire
                                                                                        Pa. I.D. 208857
                                                                                        HKM EMPLOYMENT ATTORNEYS LLP
                                                                                        220 Grant Street
                                                                                        Suite 401
                                                                                       Pittsburgh, PA  15219
                                                                                       412.485.0133
                                                                                       bbenestad@hkm.com

**JURY TRIAL DEMANDED**